AMERICAN SURETY COMPANY OF NEW YORK, Plaintiff, *v.* BERNARD ROSENTHAL et al., Defendants.

Supreme Court, Special Term, New York County, June 17, 1954.

*Frederick M. Garfield* and *Harold M. Harkavy* for plaintiff.

*George Popkin* for defendants.

BENVENGA, J. In this action for a declaratory judgment, the plaintiff seeks a determination that it is not obligated to defend an action brought against the Rosenthals (hereinafter referred to as defendants).

In September, 1951, the plaintiff issued a policy of automobile liability insurance to the defendants. By its terms, the plaintiff agreed to defend any action commenced against the defendants with respect to any claim for personal injury or property damage resulting from the operation of their automobile, provided notice of the accident was given to the plaintiff as soon as practicable.

In June, 1952, while the policy was in full force and effect, the defendants' automobile came in contact with an automobile operated by defendant Anna Siegal. As a result, both automobiles were damaged. But whether Mrs. Siegal sustained any personal injury is debatable.

In September, 1952 (more than two months after the accident), the Siegals instituted an action against the defendants. They notified plaintiff, requesting it to defend the action. Plaintiff refused on the ground that the defendants had failed to give notice of the accident as soon as practicable, as provided by the policy.

The questions presented involve the construction of the insurance policy. The policy affords insurance " with respect

to such and so many of the following coverages as are indicated by the specific premium charge or charges ", the limits of liability against each such coverage being as therein stated, subject to the terms of the policy having reference thereto. There then follow various coverages entitled Coverages A to I. The only coverages insured against are Coverages A and B, as follows: Coverage A: Bodily injury liability; limits of liability, $50,000 each person, $100,000 each accident; premiums, $113.52. Coverage B: Property damage liability; limits of liability, $5,000 each accident; premiums, $29.

Following the various coverages are provisions entitled, " Insurance Agreements ", " Exclusions ", and " Conditions ". Under " Conditions " appears the provision relating to notice of accident. So far as material, it reads as follows: " When an accident occurs, written notice shall be given by or on behalf of the insured to the [insurance] company or any of its authorized agents as soon as practicable."

Concededly, if notice was given in accordance with the foregoing provision, the plaintiff is required to defend the action against the defendants.

The defendants assert that they did not give notice of the accident prior to the institution of the action against them because they saw no damage to the Siegal car, and because Mrs. Siegal, the operator and only occupant of the Siegal automobile, assured the defendants that she was not injured. Consequently, the defendants contend that they were justified in regarding the accident as a " trivial mishap or occurrence ", and thus excused from giving notice of the occurence " as soon as practicable " after the accident (see *Melcher* v. *Ocean Acc. & Guar. Corp.*, 226 N. Y. 51).

On the evidence presented, there was substantial basis on the part of the defendants for regarding the accident, at least insofar as any claim for personal injuries is concerned, as a trivial mishap or occurrence, for Mrs. Siegal, at the time of the accident, did not appear to be injured. Of that, there can be no question. But the same cannot be affirmed of the claim for property damage, inasmuch as both automobiles involved in the collision were damaged, and the damage to neither automobile was of a minor or trivial nature. Accordingly, the failure of the defendants to give notice of the occurrence " as soon as practicable " after the accident cannot be justified or excused so far as the claim for property damage is concerned (see *Haas Tobacco Co.* v. *American Fidelity Co.*, 226 N. Y. 343, 346).

The question thus presented is whether, under the circumstances, the failure of the defendants to give the required notice affects the obligation of the plaintiff to defend the cause of action for personal injuries as distinguished from the cause of action for property damage. The determination of this question depends upon whether the insurance contract is entire or severable and divisible. The distinction is of importance, since if the contract is entire, all of the protection will be lost, whereas if the contract is severable and divisible, it will be avoided only as to the part directly affected by or connected with the breach (1 Couch's Cyclopedia of Insurance Law [1929 ed.], § 210).

Fundamentally and primarily, the question of whether a contract is entire or severable and divisible depends upon the intention of the parties, and such intention is to be determined by a fair construction of the agreement or agreements, viewed in the light of the circumstances surrounding the execution of the policy (*New Era Homes Corp.* v. *Forster,* 299 N. Y. 303, 306–307; *Matter of Rogers* v. *Graves,* 254 App. Div. 467, 470, revd. on other grounds 279 N. Y. 375; 3 Williston on Contracts [rev. ed.], § 766; 1 Couch's Cyclopedia of Insurance Law [1929 ed.], § 210).

As a general rule, a contract is entire, when by its terms, nature and purpose, it contemplates and intends that each and all of its parts and the consideration therefor shall be common each to the other and interdependent. On the other hand, the contract is said to be severable and divisible, when by its terms, nature and purpose, it is susceptible of division and apportionment (*Ming* v. *Corbin,* 142 N. Y. 334, 340–341; *Matter of Rogers* v. *Graves, supra*; 3 Williston on Contracts [rev. ed.], §§ 860A–863).

As stated in *Ming* v. *Corbin (supra)*: '' A contract is entire when the parties intend that the promise by one party is conditional upon the entire performance of his part of the contract by the other party. The contract is said to be severable when the part to be performed by one party consists of several distinct and separate items, and the price to be paid by the other is apportioned to each item or is left to be implied by law. * * * Whether a contract is entire or to be taken distributively is often a question of intention and frequently one of fact.'' (Quoted in *Portfolio* v. *Rubin,* 233 N. Y. 439, 444–445; *Wagner* v. *Gaudig & Blum Corp.,* 223 App. Div. 254, 257.)

Moreover, the essential test to determine whether a contract is entire or severable and divisible, it has been said, is simple. '' It can be nothing else than the answer to an inquiry whether

the parties assented to all the promises as a single whole, so that there would have been no bargain whatever, if any promise or set of promises were struck out. ˊ * * * The question essentially is one of fact: Did the parties give a single assent to the whole transaction or did they assent separately to several things?ˮ (3 Williston on Contracts [rev. ed.], § 863; quoted in *Rhine* v. *New York Life Ins. Co.*, 248 App. Div. 120, 135).

The question does not seem to have arisen under an automobile insurance policy of the nature here involved. The question, however, has frequently been presented in cases involving fire insurance policies, where the same policy covers several separate and distinct classs or species of property, each separately valued and insured for distinct amounts, and where the policy was issued for a gross premium.

Though there is a conflict of authority on the subject (see 1 Couch's Cyclopedia of Insurance Law [1929 ed.], § 210 *et seq.*), the prevailing rule is that laid down in *Donley* v. *Glens Falls Ins. Co.* (184 N. Y. 107, 111). There, the court said: " Whatever our views might be if the question were new, we regard it as settled that where, by the same policy, different classes of property, each separately valued, are insured for distinct amounts, even if the premium for the aggregate amount is paid in gross, the contract is severable and a breach of warranty as to one subject of insurance only does not affect the policy as to the others, unless it clearly appears that such was the intention ". (See, also, *Merrill* v. *Agricultural Ins. Co.*, 73 N. Y. 452, 458 *et seq.*; *Schuster* v. *Dutchess Co. Ins. Co.*, 102 N. Y. 260, 263; *Pratt* v. *Dwelling House Mut. Fire Ins. Co.*, 130 N. Y. 206, 221.)

Applying these principles to the policy in suit, it would seem to me that the contract is not entire, but severable and divisible. Here, though the policy enumerates Coverages A to I inclusive, it affords insurance only with respect to Coverages A and B, involving, respectively, claims for personal injury and claims for property damage. The policy sets forth the limits of liability against each coverage and stipulates for a separate premium for each. In other words, the risks are separately stated and the premiums for each risk are separately fixed. Clearly, therefore, the policy in suit is severable and divisible.

Could not the defendants have applied for and obtained personal injury coverage from one company, property damage from another, collision insurance from another and so on? There can be no doubt, that under such circumstances, the failure of the insured to give timely notice to one company would not relieve another of its obligation to defend where it had been

given the required notice. As a matter of fact, the defendants here applied for and obtained collision insurance from another company (the risk provided for under Coverage E of the policy in suit), and that company has lived up to its obligation under the collision insurance policy issued by it. If there is any distinction in principle between the hypothetical situation just referred to and that here presented, I fail to perceive it.

But even assuming that the construction here placed upon the policy is not free from doubt, upon well-settled principles, the doubt must be resolved in favor of the insured. The insurer, the party responsible for the contract, will not be allowed any benefit from a doubtful construction of the terms of its policy (*Berkshire Life Ins. Co.* v. *Weinig,* 290 N. Y. 6, 9–10; *Clover Crest Stock Farm* v. *Wyoming Val. Fire Ins. Co.,* 108 Misc. 465, 472). " The provisions of the policy should be reasonably, not rigidly, construed, and the insurer should not be relieved of liability upon technical grounds " (*Sasse* v. *Order of United Commercial Travelers,* 168 App. Div. 746, 758). Consequently, if the plaintiff intended to make default with respect to one of several coverages sufficient to avoid the entire contract, it should have manifested such intention clearly. Its failure to do so should be charged against it, and not against the insured.

Judgment is therefore granted for the plaintiff in accordance herewith. This is the decision required by section 440 of the Civil Practice Act. Settle judgment accordingly.