FILED
United States Court of Appeals
Tenth Circuit

April 22, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

SALOMON JUAN MARCOS
VILLARREAL,

Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA,

Defendant-Appellee.

No. 12-1131
(D.C. No. 1:11-CV-01000-CMA-CBS)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **ANDERSON** and **BALDOCK**, Circuit Judges, and **BRORBY**, Senior Circuit
Judge.

Salomon Juan Marcos Villarreal appeals from the district court's order

denying his motion to quash a subpoena issued by the Internal Revenue Service (IRS)

to American National Bank (Bank) and his request for an evidentiary hearing, and

granting summary judgment for the United States on its motion to enforce. We have

jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

The facts are straightforward. In March 2011, and pursuant to an income-tax treaty between the United States and Mexico, an official with Mexico's taxing authority, the Servicio de Administración Tributaria (SAT), asked the IRS for help in its investigation of Mr. Villarreal's 2009 tax liabilities. According to an affidavit filed by Douglas W. O'Donnell, the IRS official charged with reviewing such requests, the SAT informed him that Mr. Villarreal "is associated with the Mexican entit[y] . . . Bull Denim . . . and the U.S. entity Rambas . . . [and] SAT believes that [Mr. Villarreal] used these entities to falsely obtain value added tax refunds and to evade income and corporate tax obligations." Aplt. App. at 103. Mr. O'Donnell stated that the "SAT is examining [Mr. Villarreal's] business income associated with a cash deposit made into an account opened with [the Bank] in the name of Bull Denim and also with the transfer of funds from a Bull Denim account opened with Bank of America to U.S. business entity, Rambas." *Id*. at 104. Mr. O'Donnell "determined that [SAT's request] is a proper request within the guidelines of the [treaty]" and "that it is appropriate for the United States of America to honor this [r]equest and thereby lend assistance and support to Mexico, as the [treaty] contemplates." *Id*. at 103.

IRS agent Raul Pertierra issued a summons to the Bank that requested copies of account opening documents, signature cards, monthly statements, and certain deposit and withdrawal documents "pertaining to account no. [xxxxxxxx] and any

other account associated with [Mr. Villarreal] (including any private banking accounts associated with this account) for the period January 1, 2009 through December 31, 2009." *Id*. at 18.

Notice was sent to Mr. Villarreal as required by law, who then filed a motion to quash pursuant to 26 U.S.C. § 7609(b)(2). In the motion, Mr. Villarreal asked the district court to either quash the summons outright or conduct an evidentiary hearing to determine whether the IRS acted in bad faith.

According to the motion to quash, the SAT's request for the information was the latest in "a series of harassing and improper audits and investigations by the Mexican tax authorities," *id*. at 3, and in any event, because he was currently challenging audits and investigations by the SAT in Mexico, "the IRS should not assist the Mexican taxing authorities in their attempt to end run the Mexican judicial system," *id*. at 5. In his declaration Mr. Villarreal outlined his recent success in forcing the SAT to nullify its seizure of a bank account and his efforts in another proceeding to avoid a fine. Attached to his declaration was notification from the tax administration service that the seizure had indeed been nullified. Mr. Villarreal then stated his

> belief [that] during the pendency of my challenge, the Mexican tax authority will not be able to institute any formal action against me or institute a formal audit of my tax liability. Additionally, the Mexican tax authority can not take further action against any of my bank accounts in Mexico without the permission of the Mexican Court.

*Id*. at 37.

In the face of Mr. Villarreal's allegations, Mr. Pertierra asked the SAT whether its investigation had been suspended, in whole or in part. The SAT informed Mr. Pertierra that its investigation had not been suspended and that its request was otherwise in compliance with the laws of Mexico. In particular, according to Mr. Pertierra's declaration, the SAT informed him that "a challenge of the type brought by [Mr. Villarreal] may suspend a SAT investigation, but only as to the final resolution of the investigation and the finalization of the SAT's review – and not as to the gathering of evidence as part of the audit/examination." *Id*. at 111-12. Consequently, the IRS moved to enforce the summons.

The magistrate judge recommended that the IRS's motion to enforce be granted and denied Mr. Villarreal's request for an evidentiary hearing. The district court agreed that the summons should be enforced and overruled Mr. Villarreal's objections. This appeal followed.[1]

---

[1] The district court denied Mr. Villarreal's motion for a stay pending appeal. A subsequent motion for a stay was denied by this court. Following the denial we issued a show-cause order why the appeal should not be dismissed in view of Mr. Villarreal's repeated declarations that if we denied a stay his appeal would be moot. The government said that although it could not compel compliance, it would ask the SAT to return or destroy the material if Mr. Villarreal were successful on appeal. The possibility that the SAT might voluntarily return or destroy the materials is enough to save the case from mootness. "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin v. Chafin*, --- U.S. ---, 133 S. Ct. 1017, 1023 (2013) (internal quotation marks omitted). The Supreme Court also recognized that although "[e]nforcement of [an] order may be uncertain . . . [c]ourts often adjudicate disputes where the practical impact of [the] decision is not assured." *Id*. at 1025.

II.

When a party challenges a summons, the IRS is allowed to bring an enforcement proceeding. 26 U.S.C. § 7604. To obtain enforcement, the IRS "must meet the standards set out in *United States v. Powell*, 379 U.S. 48 (1964)." *United States v. Balanced Fin. Mgmt., Inc.*, 769 F.2d 1440, 1443 (1985) (further citations omitted). *Powell* requires the IRS to show that (1) the investigation will be conducted pursuant to a legitimate purpose, (2) the information sought may be relevant to that purpose, (3) the information sought is not already in the IRS's possession, and (4) the administrative steps required by the Internal Revenue Code have been followed. *Id*.

The government's burden at this stage "is a slight one because the statute must be read broadly in order to ensure that the enforcement powers of the IRS are not unduly restricted." *Balanced Fin. Mgmt*., 769 F.2d at 1443. Compliance with the *Powell* factors is usually established by the affidavit(s) of the person(s) who issued the summons. *Id*.

"The burden then shifts to the [party resisting enforcement]. The burden is a heavy one." *Id*. at 1444. Unless Mr. Villarreal can show that enforcement would "constitute an abuse of the court's process, or that in issuing the summons the IRS lack[ed] institutional good faith," the summons must be enforced. *Anaya v. United States*, 815 F.2d 1373, 1377 (10th Cir. 1987) (citation and internal quotation marks omitted).

In meeting this burden, neither "[l]egal conclusions [nor] mere memoranda of law will . . . suffice." *Balanced Fin. Mgmt.*, 769 F.2d at 1444 (internal quotation marks omitted). Instead, Mr. Villarreal "must factually oppose the Government's allegations by affidavit." *Id.* (internal quotation marks omitted). If he "cannot refute the government's *prima facie Powell* showing or cannot factually support a proper affirmative defense, the district court should dispose of the proceeding on the papers before it and without an evidentiary hearing." *Id.* (internal quotation marks omitted).

### III.

We review the court's order to enforce the summons for clear error. *United States v. Coopers & Lybrand*, 550 F.2d 615, 620 (10th Cir. 1977). Mr. Villarreal's argument notwithstanding, the traditional summary judgment standards such as viewing the facts in his favor, do not apply. Instead, Mr. Villarreal's burden "is significantly more stringent than that of a party opposing a motion for summary judgment." *United States v. Kis*, 658 F.2d 526, 543 (7th Cir. 1981). As we have explained, the party resisting enforcement of a summons "must do more than just produce evidence that would call into question the Government's *prima facie* case. The burden of proof in these contested areas rests squarely on the taxpayer." *Balanced Fin. Mgmt.*, 769 F.2d at 1444 (quoting *Kis*, 658 F.2d at 538-39).

According to Mr. Villarreal, the IRS failed to meet the first two prongs of the *Powell* test. He asserts that the SAT is engaged in a "harassment campaign," Aplt. Opening Br. at 14, and therefore the summons was issued for an improper purpose.

Further, he argues that the IRS is engaged in a "fishing expedition," *id*. at 30, and thus the information sought in the summons is irrelevant. We reject both arguments.

The allegations of a "harassment campaign" are conclusory and thus insufficient to meet Mr. Villarreal's burden. *See Balanced Fin. Mgmt*., 769 F.2d at 1444. More to the point, Mexico's good faith is irrelevant; what matters is the IRS's good faith in issuing the summons. *See United States v. Stuart*, 489 U.S. 353, 356, 369-70 (1989) (holding that the IRS is not required to establish the good faith of the foreign taxing authority, only its own); *Mazurek v. United States*, 271 F.3d 226, 231 (5th Cir. 2001) (holding that "[a]s long as the IRS acts in good faith, it need not also attest to – much less prove – the good faith of the requesting nation.").

We also disagree with Mr. Villarreal's argument that the information sought is irrelevant. The summons "is not to be judged by the relevance standards used in deciding whether to admit evidence in federal court." *United States v. Arthur Young & Co*., 465 U.S. 805, 814 (1984). Instead, the IRS may issue a summons for "items of even *potential* relevance to an ongoing investigation." *Id*. Relevance in the context of an IRS summons is rather broad and includes materials that "might throw light" on the taxpayer's return. *United States v. Sw. Bank & Trust Co*., 693 F.2d 994, 996 (10th Cir. 1982) (internal quotation marks omitted). It is beyond cavil that the requested materials meet this test.

The government correctly characterizes Mr. Villarreal's argument concerning the nature of his relationship to Rambas as a "red herring." Aplee. Br. at 38. It

- 7 -

stands to reason that any funds that were transferred at Mr. Villarreal's direction to

Rambas "might throw light" upon his tax returns. Also, Mr. Villarreal's disavowal of

any "association" with Rambas is based on a hyper-technical parsing of the word

"association." That Mr. Villarreal had a $3 million line of credit with Rambas (an

affiliate of Wynn Las Vegas), can be fairly interpreted as an "association."[2]

IV.

Whether to allow an evidentiary hearing in a summons proceeding is left to the

discretion of the district court. *Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310,

324 n.7 (1985). A court of appeals "will interfere with a district court's bottom-line

decision to conduct or withhold an evidentiary hearing in a summons enforcement

proceeding only if the appellant demonstrates an abuse of the trial court's substantial

discretion." *United States v. Gertner*, 65 F.3d 963, 969 (1st Cir. 1995). "An abuse of

discretion occurs when the district court bases its ruling on an erroneous conclusion

of law or relies on clearly erroneous fact findings. We will leave the district court's

decision undisturbed unless we have a definite and firm conviction that the court

---

[2]    Throughout his opening brief Mr. Villarreal argues that the IRS did not act in good faith because it failed to produce the SAT's request. He has cited no authority that the IRS is required to do so. Moreover, the Supreme Court has recognized that in the context of a summons issued pursuant to a treaty request, the IRS can demonstrate its good faith through affidavit evidence, which is what the agency did in this case. *See Balanced Fin. Mgmt.*, 769 F.2d at 1443 (recognizing that compliance with the *Powell* factors is usually established by affidavit).

made a clear error of judgment." *Walters v. Wal-Mart Stores, Inc.*, 703 F.3d 1167, 1172 (10th Cir. 2013) (citation and internal quotation marks omitted).[3]

In *Balanced Financial Management*, we held that a party who opposes a summons "must factually oppose the Government's allegations by affidavit," and "[l]egal conclusions or mere memoranda of law will not suffice." 769 F.2d at 1444 (internal quotation marks omitted). "If at this stage the taxpayer cannot refute the government's *prima facie Powell* showing or cannot factually support a proper affirmative defense, the district court should dispose of the proceeding on the papers before it and without an evidentiary hearing." *Id*. (internal quotation marks and brackets omitted).

We eschew the taxpayer's right to a hearing on demand for two reasons. First, "it more accurately reflects Congress's concern that summons enforcement proceedings be concluded rapidly, while at the same time . . . protect[ing] [the taxpayer] from summonses that may be an abuse of process." *Id.* at 1444 n.2 (internal quotation marks omitted). Second, we are mindful of "wast[ing] . . . judicial time and resources." *Id*. at 1445 (internal quotation marks omitted).

In his objection to the magistrate judge's recommendation, Mr. Villarreal argued that he presented enough evidence to warrant a hearing. In particular, he

---

3  Mr. Villarreal also states that he was entitled to discovery. He never develops any argument to support the statement, however, and has thus failed to invoke appellate review. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (holding that "perfunctory" allegations of error that "fail to frame and develop an issue" are insufficient to invoke appellate review).

argued that "[a]n evidentiary hearing is appropriate where a petitioner presents even limited evidence of a lack of good faith." Aplt. App. at 214. Putting a slightly finer point on the argument, Mr. Villarreal argues on appeal that it was enough for him to have developed some facts from which the court might have inferred a possibility of bad faith to obtain a hearing, and the district court thus erred in holding that he was "required to **conclusively** establish bad faith[] in order to merit an evidentiary hearing." Aplt. Opening Br. at 17.

First, we disagree with Mr. Villarreal's characterization of the district court's order. What the magistrate judge found, and the district court reaffirmed, was that Mr. Villarreal "has not made a sufficient showing to suggest the possibility of bad faith on the part of the IRS." Aplt. App. at 207, 279.

Second, even assuming that Mr. Villarreal needed to present only limited evidence, he did not meet that burden. According to Mr. Villarreal, he presented evidence of five incidents of bad faith on the part of the IRS, including that the agency "knew" that (1) the SAT could not lawfully obtain the information sought in the summons under Mexico law, (2) he was not associated with or linked to Rambas, (3) the SAT was barred from pursuing a formal audit of Mr. Villarreal in Mexico, (4) the SAT's theory of tax evasion was illogical, and (5) he did not own or control the bank account. Although Mr. Villarreal did present an affidavit, the allegations contained therein are conclusory. Mindful that "[t]he validity of a summons is tested as of the date of issuance," *United States v. Hodgson*, 492 F.2d 1175, 1177 (10th Cir.

1974), we agree with the government that "what the IRS purportedly 'knew' when it issued the summons . . . finds no support in the record," Aplee. Br. at 29 (citation omitted). Thus, the district court did not abuse its discretion in denying the request for an evidentiary hearing.

The judgment of the district court is affirmed.

Entered for the Court


Stephen H. Anderson
Circuit Judge